IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

DAN LAIN, TRUSTEE,

    Plaintiff,

    v.                                  CIVIL NO.: WDQ-11-3736

JOHN C. ERICKSON, *et al.*

    Defendants.

\* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Dan Lain (the "Trustee"), the appointed trustee of the Liquidating Creditor Trust of Erickson Retirement Communities, LLC (the "Liquidating Trust"), sued Paul L. Erickson and Cynthia A. Plungis (the "GST Trustees"), as trustees of the 2002 Nancy A. Erickson GST Trust and the 2002 John C. Erickson GST Trust (the "GST Trusts"), and others[1] for breach of contract and other claims. ECF No. 33. Pending are: (1) the Trustee's motion for summary judgment, ECF No. 154; (2) the GST Trusts' Rule 56(d) motion for discovery, ECF No. 159; and (3) the GST Trusts' motion for leave to file a supplemental Rule 56(d) affidavit, ECF No. 166. No hearing is necessary. Local Rule 105.6 (D. Md. 2011). For the following reasons the GST Trusts' motions will

---

[1] The claims against all other defendants have been dismissed. ECF No. 148 at 1.

be granted, and the Trustee's motion for summary judgment will be denied without prejudice.

I. Background[2]

Erickson Group, LLC ("EG") was a holding company. ECF No. 33 at 9. Its only asset was its 100% membership interest in Erickson Retirement Communities, LLC ("ERC"). *Id.* ERC was a privately-owned entity that developed and managed retirement communities. *Id.* at 8-9. John Erickson was the President of EG and had a controlling interest. *Id.* at 12. Several members of his family, including his wife Nancy, served as directors and officers of EG and ERC. *Id.* at 11-12.

John and Nancy Erickson established the GST Trusts as charitable remainder trusts which expired five years from the date of creation. *See* ECF No. 154-3. Both trusts held ownership interests in EG. *See id.*; ECF No. 154-1 at 4-5. Before their expiration, the GST Trusts sold their EG interests to the Baltimore Community Foundation ("BCF"). ECF No. 154-1 at 4. In 2005, as part of a tax and estate planning transaction, EG sought to buy-back the ownership interests from the BCF at their fair market value of $55 million. *Id.*; ECF Nos. 154-5 at 1, 154-8 at 5. EG lent the money to the GST Trusts; the GST

---

[2] The facts are from the complaint, ECF No. 33; the pending motions, ECF Nos. 154, 159, 166; the exhibits attached to the pending motions; and the supplemental briefing on jurisdiction, ECF Nos. 172-73, 175.

2

Trusts issued a promissory note to EG on May 4, 2005 (the "Note"); and the GST Trusts purchased the EG interests from the BCF. See ECF Nos. 154-1 at 3, 5, 154-4, 154-7 at 1. The GST Trusts never made any payments on the Note--the first payment was due on May 4, 2006 and the Note fully matured on April 1, 2010.[3] ECF Nos. 33 at 17; 154-7 at 1.

On October 19, 2009, ERC, EG, and several subsidiaries of those companies (collectively "the debtors") sought protection under Chapter 11 of Title 11 of the United States Code ("Chapter 11") in the Bankruptcy Court for the Northern District of Texas. ECF No. 33 at 1 n.1, 2, 8. On April 16, 2010, a reorganization plan was confirmed (the "Plan"), which created the Liquidating Trust to prosecute certain claims on behalf of specified unsecured creditor beneficiaries. Id. at 8; ECF Nos. 154-1 at 6, 172 at 7-8. The Plan specifically assigned to the Liquidating Trust any claims associated with the Note. See ECF Nos. 172 at 8, 171-1 at 7, 15. Lain was appointed Trustee of the Liquidating Trust. ECF No. 172 at 6-7.

---

[3] The parties dispute why payments were never made on the Note. The Trustee asserts that the Ericksons "extracted" the loan from EG to "line[] their own pockets," never intending to pay it back or use the funds for EG purposes. See ECF No. 154-1 at 5. The GST Trusts contend that EG never intended for the GST Trusts to make payments on the Note, EG's creditors knew about the transaction, and the Note was created for tax planning purposes. ECF No. 166-1 at 1-2.

On June 2, 2011, the Trustee filed in the Texas Bankruptcy Court a 13 count complaint alleging, *inter alia*, that the Erickson family and the GST Trusts had siphoned off the debtors' assets for the Erickson family's personal use. *See, e.g.*, ECF No. 33 at 11. The complaint alleged nine counts under the Maryland code or Maryland common law (counts 1-9), three counts of fraudulent transfers (counts 10-12), under 11 U.S.C. §§ 544-551, and one count of avoidable preferences, under 11 U.S.C. §§ 547, 550 (count 13). ECF No. 33. On August 9, 2011, the GST Trustees moved to dismiss the complaint on grounds that: (1) counts 10, 11 and 13 failed to state a claim on which relief could be granted as to the GST Trusts; (2) the bankruptcy court could not constitutionally adjudicate any of the claims; (3) the bankruptcy court lacked jurisdiction over the GST Trusts; and (4) the venue was improper.[4] ECF No. 83 at 2.

---

[4] Grounds 2-4 were mooted upon the transfer of the litigation from the Texas Bankruptcy Court to the District of Maryland Bankruptcy Court and finally to this Court. The Trustee only seeks summary judgment against the GST Trusts on count one of the complaint--breach of contract for nonpayment of the Note. ECF Nos. 33 at 28, 154 at 1. The Trustee asserts that the motion to dismiss "has been almost entirely moot for two years," and notes that "[o]f the arguments that are still pending in the motion (if any), none seek dismissal of the promissory note claim." ECF No. 163 at 4. Although the GST Trusts assert that the motion is still "pending," ECF No. 159 at 2, they did not file a reply brief to contradict the Trustee's characterization of the motion as moot. The Court will take the Trustee at his word and deny the motion to dismiss as moot without prejudice-- the GST Trusts may refile the motion if the Trustee pursues claims against the GST Trusts on counts 10, 11, and 13.

4

On October 12, 2011, the Texas Bankruptcy Court transferred the adversary action to the District of Maryland. ECF No. 1-1 at 10. Under Local Rule 402, the action was automatically referred to the Bankruptcy Court for the District of Maryland. *Id.* at 11. On May 31, 2012, this Court granted the defendants' motion to withdraw the reference. ECF No. 26.

On January 11, 2013, following a settlement agreement, the Trustee filed a stipulation of dismissal with prejudice of all claims against all defendants, except the GST Trusts. ECF Nos. 148, 152. The Trustee and the GST Trusts reached a settlement, but the agreement was not approved by the bankruptcy court because creditors objected. *See* ECF Nos. 152, 155. On May 2, 2013, the Trustee moved for summary judgment for breach of contract (count one of the complaint) against the GST Trusts and Scott Erickson, the new GST Trustee. *See* ECF No. 154. The motion contends that the Liquidating Trust is entitled to recover more than $95 million in principal, interest, and late charges on the Note. ECF No. 154-1 at 3. On May 15, 2013, the GST Trusts filed an unopposed motion for an extension of time to respond to the summary judgment motion. ECF No. 155. The Court granted this motion. ECF No. 158.

On June 13, 2013, the GST Trusts again moved for an extension of time to file a response. ECF No. 159. They attached a Rule 56(d) affidavit, asserting that they needed

5

additional time to conduct discovery. ECF No. 159-1. They also noted that their motion to dismiss was still pending, and they had not had an opportunity to answer the Trustee's complaint and assert affirmative defenses. ECF No. 159 at 4. On July 8, 2013, the Trustee opposed this motion. ECF No. 163. On August 2, 2013, the GST Trusts moved for leave to file a supplemental Rule 56(d) affidavit. ECF No. 166. On August 20, 2013, the Trustee opposed this motion. ECF No. 169.

On October 3, 2013, the Court ordered the parties to submit supplemental briefing on the Court's subject matter jurisdiction. ECF No. 171. On October 17 and 24, the parties submitted briefing.[5] ECF Nos. 171, 172, 175.

II. Analysis

A. Subject Matter Jurisdiction

The Trustee asserts that the Court has subject matter jurisdiction over this suit under 28 U.S.C. § 1334(b), because this suit is "related to" a bankruptcy case.[6] ECF No. 172 at 17. The GST Trusts contend that, following confirmation of a Chapter 11 bankruptcy plan, federal courts' "related to" jurisdiction

---

[5] Because the Court concludes that there is jurisdiction, the Trustee's motion to file a supplemental memorandum in support of jurisdiction will be denied as moot. See ECF No. 176.

[6] The Trustee also contends that the Court has diversity jurisdiction. ECF No. 172 at 6. Because the Court concludes that there is jurisdiction under § 1334(b), it will not decide whether there is also diversity jurisdiction.

narrows, and "the Trustee's claims against the GST Trusts lack the requisite close nexus to the Plan." ECF No. 171 at 3. Federal district courts have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." § 1334(b). The Fourth Circuit has adopted the Third Circuit's tests to determine when a claim is "related to" a bankruptcy proceeding under § 1334(b), as announced in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984) and *Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.)*, 372 F.3d 154 (3d Cir. 2004).[7] *See Valley Historic Ltd. P'ship v. Bank of New York*, 486 F.3d 831, 836-37 (4th Cir. 2007).

*Pacor*, decided in the pre-confirmation context, held that a proceeding is "related to" bankruptcy if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Owens-Ill., Inc. v. Rapid Am. Corp. (In re Celotex Corp.)*, 124 F.3d 619, 625 (4th Cir. 1997)

---

[7] Although "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate," bankruptcy courts' "related to" jurisdiction is not "limitless." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308, 115 S. Ct. 1493, 1499, 131 L. Ed. 2d 403 (1995) (quoting *Pacor*, 743 F.2d at 994); cf. *Stern v. Marshall*, 131 S. Ct. 2594, 2611, 180 L. Ed. 2d 475 (2011) (holding that bankruptcy court adjudication of state law counterclaim violated Article III because the action was "independent of the federal bankruptcy law" and its adjudication therefore involved the exercise of Article III judicial power by non-Article III courts).

(quoting *Pacor*, 743 F.2d at 994). Once the bankruptcy court has confirmed the Chapter 11 plan, however, the scope of "related to" jurisdiction narrows. *In re Air Cargo, Inc.*, 401 B.R. 178, 185 (Bankr. D. Md. 2008). In the post-confirmation context, there must be a "close nexus" between the proceeding and bankruptcy--"the claim must affect an integral aspect of the bankruptcy process." *Valley Historic*, 486 F.3d at 836-37 (quoting *Resorts*, 372 F.3d at 167) (internal quotations omitted). "[M]atters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus." *Id.* (quoting *Resorts*, 372 F.3d at 167) (internal quotations omitted).

In *Resorts*, a post-confirmation case, a litigation trust formed to prosecute some of the debtor's pre-petition claims brought a malpractice suit against an accounting firm that had performed services for the trust. 372 F.3d at 156-58. The debtor was not a party to the action. *Id.* at 157. Although the court noted that "the scope of bankruptcy court jurisdiction diminishes with plan confirmation," it held that jurisdiction "does not disappear entirely." *Id.* at 165. However, in the context of litigation trusts, which always maintain some connection to the bankruptcy post-confirmation, bankruptcy jurisdiction required careful circumscription to avoid

"'unending jurisdiction.'" *Id.* at 167. The court held that the malpractice claim lacked a close nexus to the bankruptcy estate, because its resolution "will not affect the estate; it will have only incidental effect on the reorganized debtor; it will not interfere with the implementation of the Reorganization Plan; [and] though it will affect the former creditors as Litigation Trust beneficiaries, they no longer have a close nexus to bankruptcy plan or proceeding because they exchanged their creditor status to attain rights to the litigation claims." *Id.* at 169.

In *Valley Historic*, the debtor partnership filed for bankruptcy after the Bank of New York informed it that the debtor's loan agreement with the bank required a tenfold increase in monthly loan payments. 486 F.3d at 834. The bank filed a proof of claim to which the debtor objected. *Id.* The bankruptcy court decided to delay the adversary proceeding to determine the amount of the allowed claim until after plan confirmation. *Id.* The plan was confirmed, and the debtor used the proceeds from the sale of its property to pay off all of its creditors, including the bank. *Id.* The debtor then filed an adversary proceeding against the bank alleging, *inter alia*, breach of contract. *Id.* Applying *Resorts*, The Fourth Circuit concluded that there was "no conceivable bankruptcy administration purpose to be served by the Debtor's adversary

proceeding because the Plan made no provision for the use of any recovery from the adversary proceeding but instead provided for the satisfaction of the Debtor's obligations 'entirely from the post-petition rents and earnings of the Debtor through the operation of its real estate.'" *Id.* at 836. The debtor "had paid all its creditors . . . and the Plan was substantially consummated." *Id.* at 837. Accordingly, the Court concluded that "related to" jurisdiction was lacking. *Id.* at 838.

In contrast, in *Air Cargo*, the bankruptcy plan "provided for the liquidation of Air Cargo by creating a litigation trust" which would, *inter alia*, prosecute pre-petition claims of the debtor. 401 B.R. at 182. The plan specifically provided that one of the main assets of the litigation trust was "funds resulting from the anticipated prosecution of avoidance actions, including actions to avoid and recover fraudulent transfers and preferences." *Id.* The trust filed an adversary proceeding, seeking to recover fraudulent conveyances and asserted other state law claims. *Id.* at 183. The Court held that, under *Valley Historic* and *Resorts*, the suit was "related to" bankruptcy, because the bankruptcy plan "provides that all funds ultimately recovered in any lawsuit brought by the litigation trustee will be devoted to satisfy the claims of creditors," bankruptcy courts have greater post-confirmation subject matter jurisdiction over litigation trusts created by liquidating,

rather than reorganizing, bankruptcy plans, the main claim at issue arose out of bankruptcy law, and the claims arose pre-petition. *Id.* at 187-89. Thus, the Court found jurisdiction even though the debtor only "reference[d] these claims in the Plan which created the litigation trust" generally, rather than specifically. *Id.* at 189.

Here, although the Plan has been confirmed, the Plan specifically: (1) creates the Liquidating Trust and appoints the Trustee to prosecute certain claims of the debtors on behalf of a sub-set of the debtors' creditors; and (2) provides for the Liquidating Trust's collection of the state law claim, which arose pre-petition,[8] at issue in this suit. *See* ECF No. 172 at 7-8. In other words, unlike the claims at issue in *Resorts* and *Valley Historic*, the claim against the GST Trusts was specifically integrated into the Plan as a means of recovery for certain debtors--it is a matter affecting the "implementation, consummation, execution, or administration of the confirmed plan." *Valley Historic*, 486 F.3d at 836-37. Although, unlike *Air Cargo*, the claim against the GST Trusts does not arise under federal law and the Plan reorganized, rather than liquidated,

---

[8] The Note was signed on May 4, 2005, and the first payment was due May 4, 2006, ECF No. 154-7 at 1, three years before the debtors filed for bankruptcy, *see* ECF No. 154-1 at 6 n.14. The Note defined a missed payment as an "event of default" which gave EG the option to demand full payment of the Note. ECF No. 154-7 at 2-3.

the debtors,[9] neither *Air Cargo* nor *Valley Historic* held that state law claims prosecuted by litigation trusts created by reorganization bankruptcy plans are outside the scope of post-confirmation jurisdiction.[10] Moreover, *Air Cargo* noted that claims specifically provided for in a bankruptcy plan are more likely to have a "close nexus" to bankruptcy under *Resorts*. *See* 401 B.R. at 189 (*citing Insilco*, 330 B.R. at 525 (finding no "related to" jurisdiction under *Resorts*, because "neither the Plan nor Disclosure Statement specifically identifies the claims against the defendants as an asset to be liquidated and distributed to creditors")).[11] Accordingly, because the claim at

---

[9] *See* ECF No. 172 at 7.

[10] *See also In re Insilco Technologies, Inc.*, 330 B.R. 512, 525 (Bankr. D. Del. 2005) *aff'd*, 394 B.R. 747 (D. Del. 2008) ("The jurisdictional statutes apply without differentiating between liquidating and reorganizing debtors. *Resorts* makes no such distinction and holds that post-confirmation 'related to' jurisdiction lies only if the matter at issue affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan.").

[11] *See also In re BWI Liquidating Corp.*, 437 B.R. 160, 166 (Bankr. D. Del. 2010) ("[This post-confirmation] adversary proceeding . . . is unrelated to any specific provision of the Plan. These [are] the same factors the Third Circuit noted in *Resorts* when it concluded that the mere potential to increase the assets of the trust is insufficient to establish a close nexus."); *In re Wellington Apartment, LLC*, 353 B.R. 465, 470-71 (Bankr. E.D. Va. 2006) ("According to the plan, the only monies to be distributed are the litigation proceeds, should any actually be collected. . . . [T]he wording [of the Plan infers] that *collection* of the proceeds is contemplated by the plan . . . . Furthermore, obviously the action sought impacts the plan as the entire plan is based on the collection [of] the

issue here was provided for in the Plan, is being prosecuted by a trust created by the Plan, will bring recovery to the debtors' creditors if successful,[12] and arose pre-petition,[13] the claim has the requisite close nexus to the bankruptcy case, and the Court has jurisdiction.

B. Rule 56(d) Affidavit

Rule 56(d) requires the district court to refuse to grant summary judgment, when the non-movant "has not had the opportunity to discover information that is essential to his opposition." Works v. Colvin, 519 F. App'x 176, 181-82 (4th Cir. 2013) (quoting Fed.R.Civ.P. 56(d)) (internal quotations omitted). The nonmovant must show through affidavits that he cannot yet properly oppose a motion for summary judgment. Fed.R.Civ.P. 56(d); Evans v. Techs. Apps. & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996). The Fourth Circuit "place[s] great

---

litigation proceeds, without which there is no distribution under the plan.") (emphasis in original).

[12] Like the litigation trustee's claims in Air Cargo, the claim at issue in this case is "the liquidating trust's biggest asset." See ECF No. 154-1 at 6; Air Cargo, 401 B.R. at 186; see also In re Railworks Corp., 325 B.R. 709, 722-24 (Bankr. D. Md. 2005) ("Here the implementation of the payment of unsecured creditors through claims prosecuted by the Litigation Trustee is precisely at issue, and falls squarely in the realm of limited jurisdiction that a bankruptcy court may hear.").

[13] See Railworks, 325 B.R. at 724 (finding "related to" jurisdiction, in part, because "Resorts is much unlike the situation here, where the Litigation Trust Claims are pre-petition claims that could have been asserted by the debtor-in-possession directly prior to confirmation of Debtors' Plan").

weight on the Rule 56[d] affidavit." *Evans*, 80 F.3d at 961. "The purpose of the affidavit is to ensure that the nonmoving party is invoking the protections of Rule 56[d] in good faith and to afford the trial court the showing necessary to assess the merits of a party's opposition." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quotation marks omitted).

"A Rule 56[d] affidavit that conclusorily states that discovery is required is insufficient; the affidavit must specify the reasons the party is unable to present the necessary facts and describe with particularity the evidence that the party seeks to obtain." *Radi v. Sebelius*, 434 F. App'x 177, 178 (4th Cir. 2011) (citing *Trask v. Franco*, 446 F.3d 1036, 1042 (10th Cir. 2006)). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995).

However, because the rule "is intended as a safeguard against a premature grant of summary judgment[,] [courts] should construe the rule liberally[.]" *Works*, 519 F. App'x at 182 (internal quotations omitted); *accord Harrods*, 302 F.3d at 245

n. 18 (citing with approval sources applying the rule liberally).

In support of their motion for more time to conduct discovery, the GST Trusts attached a Rule 56(d) affidavit signed by Scott Erickson. ECF No. 159-1. The affidavit asserts that "the GST Trusts and the Liquidating Trustee have not exchanged any discovery in the adversarial proceeding," because the case has not been subject to a scheduling order since September 6, 2011, the GST Trusts' motion to dismiss is still pending, and the parties engaged in extensive settlement discussions. ECF No. 159-1. The affidavit declares that the GST Trusts are entitled to more time for discovery, because they "have not asserted any substantive defenses to the Liquidating Trustee's claim for breach of the promissory note nor have they had the opportunity to conduct any discovery on such claims or defenses." ECF No. 159-1. The Trustee contends that this affidavit does not "articulate a single fact needed to defeat summary judgment or articulate a plausible basis for a belief that any facts exist." ECF No. 163 at 3. In response to the Trustee's objections, the GST Trusts move for leave to file a second, untimely affidavit which identifies more specifically the discovery they seek and the facts they hope to uncover. See ECF No. 166. The Trustee opposes this motion, asserting that

the GST Trusts have not established "good cause or excusable neglect for their untimely filing." ECF No. 169 at 2.

The Trustee correctly notes that the district court may deny a Rule 56(d) request when the party seeking discovery has not been diligent in conducting discovery.[14] However, the GST Trusts' affidavit has specified legitimate reasons they are "unable to present the necessary facts" to support their defense. *Radi*, 434 F. App'x at 178. The GST Trusts assert that the promissory note claim "has not been subject to an operational scheduling order since September 6, 2011," before the case was transferred to this Court and before the GST Trusts filed the pending motion to dismiss in this Court.[15] Accordingly, the GST Trusts were not obliged to engage in discovery until the motion was resolved and a scheduling order entered. *See Works*, 519 F. App'x at 181 ("Because this motion was styled as a motion to dismiss, by operation of the District of Maryland's Local Rules, a scheduling order could not be entered—and discovery could not commence—until the motion was

---

[14] *See, e.g., White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 n.2 (4th Cir. 2004).

[15] The scheduling order was vacated by the Texas Bankruptcy Court on August 24, 2011. ECF No. 98 at 2. Although the Trustee points out that the arguments in the motion to dismiss are "almost entirely moot," ECF No. 163 at 4, the motion was never decided. It was marked as resolved on the Court's docket when the civil case was closed, even though the GST Trusts were not dismissed from the case with the other original defendants.

resolved.") (*citing* D. Md. Local Rule 104(4)). Moreover, the parties were engaged in "extensive" settlement discussions[16] over several months that led to the dismissal of all but two of the original defendants.[17] Thus, the GST Trusts, the nonmoving parties, have sufficiently established that they, "through no fault of [their] own, [have] had little or no opportunity to conduct discovery." *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008) (*quoting Harrods,* 302 F.3d at 244 (internal quotations omitted)).

The Trustee asserts that the GST Trusts' failure to identify in their first affidavit the specific discovery they will conduct and the facts they wish to investigate is fatal to their motion for discovery. *See* ECF No. 163 at 3; *e.g.*, *Richard v. Leavitt*, 235 F. App'x 167, 167 (4th Cir. 2007) (affirming

---

[16] ECF No. 159-1 at 1. On January 30, 2013, the parties submitted a status report noting that they had reached a settlement, which would be effective upon bankruptcy court approval. ECF No. 152. However, creditor objections to the settlement apparently prevented approval. *See id.*

[17] The Trustee cites *Bilal v. Best Buy Co.*, 2008 U.S. Dist. LEXIS 53468 (S.D.N.Y. June 30, 2008) for the proposition that "hope that settlement negotiations would be successful" does not support "good cause" for giving additional time for discovery under Rule 56(d). *See* ECF No. 163 at 4. In denying the plaintiff's Rule 56(d) motion, the *Bilal* court relied heavily on the fact that the plaintiff disregarded the judge's explicit warnings that the plaintiff would not receive additional discovery deadline extensions. 2008 U.S. Dist. LEXIS 53468, at *14-*16. Here, there was no schedule set for discovery, and the parties reached a settlement. Thus, this case does not compel a rejection of the GST Trusts' Rule 56(d) motion.

grant of summary judgment because nonmovant "failed to identify relevant information" to support his motion for discovery and failed to "demonstrate that information relevant to his claim actually existed"). The GST Trusts' first affidavit only states that it needs additional unspecified discovery to establish unspecified claims and defenses. See ECF No. 159-1. These statements are insufficient to support their request for additional discovery. See, e.g., Radi, 434 F. App'x at 178.

The GST Trusts' second, untimely, affidavit provides, in much more detail, the facts the defendants wish to investigate and the discovery they wish to conduct[18] to establish defenses to the promissory note.[19] Given the GST Trusts' detailed assertions in the second affidavit that fact-specific issues of intent and motive require discovery and will likely support viable defenses

---

[18] For example, the affidavit identifies several depositions the defendants wish to take of identified bank officials and the testimony they will likely elicit. ECF No. 166-1.

[19] The Trustee asserts, without citation, that the affidavit does not meet the requirements of Rule 56(d), because "the affidavit is full of hearsay and conclusory statements about what others allegedly said and believed." ECF No. 169 at 3. However, to defer consideration of summary judgment the GST Trusts only need to "describe with particularity the evidence [they seek] to obtain." See Radi, 434 F. App'x at 178. The affidavit need not establish the admissibility of that undiscovered evidence. Cf. Fed.R.Civ.P. 26(b)(1)("scope of discovery" includes "any nonprivileged matter that is relevant to any party's claim or defense," which "need not be admissible at the trial if the discovery is reasonably calculated to lead to the discovery of admissible evidence").

to their liability on the note,[20] and construing the defendants' submissions in a "spirit of liberality,"[21] the Court will give the defendants an opportunity to prove their defenses by granting leave to file the second affidavit.[22] *Cf. Harrods*, 302 F.3d at 246-47 ("[S]ummary judgment prior to discovery can be particularly inappropriate when a case involves complex factual questions about intent and motive."); *Westerfield v. United States*, 366 F. App'x 614, 619-20 (6th Cir. 2010) (reversing denial of a motion to reconsider the district court's refusal to

---

[20] The affidavit asserts, *inter alia*, that "EG knew that the GST Trusts would not pay back" the promissory note "on their own accord," and that the transaction was disclosed to EG creditors who did not "believe they had any collateral interest in the eventual notes that were created to facilitate optimal tax planning for the transaction." ECF No. 166-1.

[21] *See, e.g., Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 721 F.3d 264, 281 (4th Cir. 2013) ("[A Rule 56(d)] request is 'broadly favored and should be liberally granted because the rule is designed to safeguard non-moving parties from summary judgment motions that they cannot adequately oppose.'") (quoting *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010)).

[22] *Cf. Thompson v. E.I. DuPont de Nemours & Co., Inc.*, 76 F.3d 530, 534 (4th Cir. 1996) ("[A] district court should find 'excusable neglect'" for untimely submissions "only in the '*extraordinary cases* where injustice would otherwise result.'") (internal quotations omitted) (emphasis in original). Although the Trustee asserts that further delay in the litigation will cause substantial prejudice to the Liquidating Trust's beneficiaries and the Trustee, because the litigation has been pending for a long time at great expense, awarding summary judgment on a promissory note allegedly worth over $95 million without giving the GST Trusts an adequate opportunity to oppose the motion will cause even greater prejudice to the GST Trusts.

entertain a second untimely Rule 56(d) affidavit, because failure to consider the second meritorious affidavit "would work a manifest injustice on plaintiff"); *Buchanan v. Stanships, Inc.*, 744 F.2d 1070, 1073-74 (5th Cir. 1984) (applying Rule 56(d) "liberally" to consider late-filed affidavits). Accordingly, the GST Trusts' motion to file a second affidavit, and their Rule 56(d) motion, will be granted.[23] The Trustee's motion for summary judgment will be denied without prejudice.[24]

III. Conclusion

For the reasons stated above, the defendants' motions for discovery and for leave to file a supplemental Rule 56(d) affidavit will be granted. The Trustee's motion for summary judgment will be denied without prejudice.

12/6/13
Date

/s/ William D. Quarles
William D. Quarles, Jr.
United States District Judge

---

[23] Because the Court will deny the GST Trusts' pending motion to dismiss as moot, *see supra* note 4, the GST Trusts will have 14 days from the date of the order accompanying this memorandum opinion to file an answer.

[24] The parties will be ordered to submit a proposed scheduling order 30 days from the date of the memorandum opinion accompanying this order.